UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADIC DESIGN USA LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>    Defendant. | Case No. 23-cv-06590-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Before the Court is Defendant U.S. Citizenship and Immigration Services' motion to dismiss, Dkt. No. 18. The Court finds the matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7-1(b). The Court GRANTS the motion.

**I.   BACKGROUND**

This case concerns the H-1B immigration program, which grants legal nonimmigrant status to foreign workers who perform temporary work in the United States in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(B).

In 2019, the Department of Homeland Security (DHS) promulgated a new rule requiring prospective employers to first register each potential H-1B employee into a lottery system. Dkt. No. 1 ("FAC") ¶ 23 (citing 8 C.F.R. § 214.2(h)(8)(iii)(A)(1)). U.S. Citizenship and Immigration Services (USCIS) then selects from the lottery the registrants who may move forward in the process and submit an H-1B petition. *Id.*

USCIS additionally requires employers to complete the following attestation when submitting an H-1B registration:

> "I further certify that this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is

1
2
3

being submitted, have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission."

4

FAC ¶ 32.

5
6
7
8
9
10
11

Plaintiffs LeadIC Design USA, LLC, LeadSOC Technologies USA, LLC, Excel VLSI Technologies USA, LLC, and Gapbridge Software Services USA, LLC (collectively "Plaintiffs") are companies that filed H-1B petitions for the fiscal year 2024. FAC ¶ 35. Each Plaintiff is a subsidiary of the same parent entity. *Id.* ¶ 39. Each Plaintiff registered one or more individuals into the H-1B lottery, and then filed H-1B petitions on behalf of the registrants who were selected. *Id.* ¶ 39. Defendant issued a Notice of Intent to Deny (NOID) to Plaintiffs for each petition, then denied the petitions. *Id.* ¶ 35.

12
13
14
15
16
17
18
19
20
21

Plaintiffs sued Defendant in December 2023, alleging that the denials of Plaintiffs' petitions violate the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). Dkt. No. 1 ¶ 51. Plaintiffs filed an amended complaint in March 2024. *See* FAC at 1. The amended complaint asserts that Defendant denied the petitions based on a finding that Plaintiffs had violated the registration attestation by working with another entity to submit a registration to unfairly increase the chances of selection for their registered beneficiaries. *Id.* ¶ 35. According to Plaintiffs, the portion of the attestation prohibiting this conduct is a "new, substantive requirement" that Defendant created absent any notice and comment and is unenforceable as a result. *Id.* ¶ 57. Plaintiffs seek an order declaring that the petitions were unlawfully denied and directing Defendant to rescind the NOIDs and reopen the petitions for further process. *Id.* at 23–24.

22
23
24

Defendant moves to dismiss the amended complaint, arguing that Plaintiffs lack standing to sue because their injury is not redressable, and that Plaintiffs fail to state a claim. *See* Dkt. No. 18 ("Mot.").

25
26
27

//
//
//

28

2

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject matter jurisdiction exists." *See Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975, n.12 (9th Cir. 2012) (quotation omitted). The party invoking subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Article III standing requires that "a plaintiff establish a (1) legally recognized injury, (2) caused by the named defendant that is (3) capable of legal or equitable redress." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820–21 (9th Cir. 2002).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

1   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**III.   DISCUSSION**

    **A.   Standing**

Defendant argues that Plaintiffs lack standing because their claimed injury is not redressable by a favorable decision by the Court. Mot. at 29. Defendant relies on *M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018), for the proposition that "[i]f a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability, unless she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." *Id.* at 1083 (internal citations omitted); Mot. at 32. Defendant argues that Plaintiffs' amended complaint fails to meet this standard because it is "devoid of any allegations or proffer of evidence that would support Plaintiffs' claim that each registration was based on a legitimate job offer, that they did not work with others to unfairly improve each beneficiary's chance of selection, or that there is a legitimate business need exception in the registration context." *Id.* at 31. Put another way, according to Defendant, even if Plaintiffs obtained their requested relief, which would result in the Court finding the attestation requirement unlawful and Defendant rescinding the NOIDs and reopening Plaintiffs' petitions for processing, Defendant would still deny the petitions for fraud based on unchallenged registration requirements, such that the Court cannot provide redress. *Id.* at 29–30.

Plaintiffs' burden to establish redressability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997); *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024). "Plaintiffs need not demonstrate that there is a guarantee that their injuries will be redressed by a favorable decision." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (internal citation and quotation omitted). Instead, Plaintiffs must only show that there would be a "change in a legal status," and that a "practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

Here, Plaintiffs have pled that all of the petitions were denied solely on the basis of the

4

challenged portion of the attestation, which precludes petitioners from working with others to submit registrations to unfairly increase the chances of selection in the H-1B lottery. *See* FAC ¶¶ 36–45. Plaintiffs argue that Defendant would not have denied their petitions for fraud absent the attestation requirement, because Plaintiffs would have been given the opportunity to demonstrate that there was a legitimate business need for their multiple registrations, and to show why the companies were related. *Id.* ¶ 56. The Court finds that these facts are sufficient for Plaintiffs to establish redressability at the pleading stage, even if there is a possibility that Defendant would deny the petitions on a basis other than the challenged portion of the attestation. *See Renee*, 686 F.3d at 1013 ("If an agency has misinterpreted the law, there is Article III standing 'even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason.'") (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)).

Defendant's contention that Plaintiffs must show facts sufficient to rule out the other possible grounds for denying the petitions contradicts the standard for pleading the elements of standing, which is satisfied if a plaintiff has "alleged specific facts plausibly explaining" each element. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011). Under this standard, a plaintiff has not adequately established redressability when the facts pled make it implausible or too speculative that the requested relief would redress their injury. *See, e.g.*, *M.S. v. Brown*, 902 F.3d at 1085 (no redressability where plaintiff sought declaration that voters' rejection of ballot measure granting driving privileges to undocumented immigrants was unconstitutional because declaration would not be tantamount to majority voter approval, which was necessary to require state to grant driving privileges); *Sharma v. United States Dep't of Homeland Sec.*, No. 24-CV-03402-NC, 2024 WL 4647617, at *5 (N.D. Cal. Oct. 31, 2024) (holding that plaintiff asking for H-1B petition to be reopened had failed to establish redressability because his employer had already withdrawn the petition).

But here, the opposite is true. In order to find that Plaintiffs' petitions would be denied as fraudulent for reasons other than the attestation, the Court would have to fill in gaps in the evidence regarding Plaintiffs' petitions in the administrative record, and resolve factual disputes about that evidence in Defendant's favor. For their part, Plaintiffs contest Defendant's assertion

that the denials were based on anything other than the challenged portion of the attestation. *See* Opp. at 15. Further, Plaintiffs argue that, as a result, they were not given adequate notice that their responses to the NOIDs needed to address any issues other than the multiple registration problem, such as the legitimacy of their job offers or other allegations of fraud. *See id.* Whether these arguments will succeed on the merits is not the relevant question: at this stage, all that matters is that they are plausible. And the Court may not find Plaintiffs' theory implausible or speculative by assuming the truth of Defendant's version of the facts. *See Renee*, 686 F.3d at 1015 (redressability established even though requested relief would not require government to take a specific action because court was "unwilling to assume" that the government would take no action). Accordingly, the Court finds that Plaintiffs have sufficiently established redressability to survive at the pleading stage, and the Court **DENIES** Defendant's motion to dismiss the amended complaint on that basis.[1]

### B. Failure to State a Claim

Defendant also contends that even if Plaintiffs can establish standing, they fail to state a claim under Rule 12(b)(6).

Plaintiffs' single claim alleges that Defendant violated the APA by denying Plaintiffs' petitions on unlawful grounds. FAC ¶ 32 (citing 5 U.S.C. § 706(2)(A)). Specifically, Plaintiffs allege that Defendant denied the petitions based on the portion of the registration attestation that requires registering entities to certify that they did not work together to submit a registration to unfairly increase the chances of a beneficiary's selection in the H-1B lottery. *Id.* Plaintiffs claim this requirement is unlawful because it implemented new, substantive criteria for the H-1B program absent legislation or notice and comment rulemaking. *Id.* ¶ 54. According to Plaintiffs, the challenged portion of the attestation constitutes a new and substantive rule because it

---

[1] Defendant relies on *Atabekov v. U.S. Citizenship & Immigr. Servs.*, 717 F. Supp. 3d 850 (D. Neb. 2024), a case from the District of Nebraska addressing a similar challenge to the registration attestation. In *Atabekov*, the court held that the plaintiff could not establish redressability because his H-1B petition "would have been revoked under [the] other unchallenged prohibitions on fraud and willful misrepresentation," based on the evidence detailed in USCIS's revocation of plaintiff's petition. *Id.* at 868. Having found that it is not appropriate to weigh the evidence to resolve disputed facts at the motion to dismiss stage, the Court respectfully disagrees with the reasoning of *Atabekov*.

6

1    implements requirements that carry the force of law and "depart[s] from decades of practice and
2    policy." *Id.* ¶¶ 54, 55.
3          Defendant argues that this claim fails as a matter of law because the H-1B lottery
4    registration requirement was created by a final rule that DHS published in 2019, and the attestation
5    is consistent with that rule and simply provides guidance to parties submitting registrations for the
6    lottery. Opp. at 35–36. As such, Defendant contends it is an interpretative rule that did not
7    require notice and comment. Dkt. No. 26 ("Reply") at 10–11.[2]
8          "[A]n agency need not follow the notice and comment procedure to issue an interpretive
9    rule." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). Generally,
10   "interpretive rules merely explain, but do not add to, the substantive law that already exists in the
11   form of a statute or legislative rule," while legislative rules "create rights, impose obligations, or
12   effect a change in existing law pursuant to authority delegated by Congress." *Id.* Under the Ninth
13   Circuit's framework, a rule is legislative "(1) when, in the absence of the rule, there would not be
14   an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked
15   its general legislative authority; or (3) when the rule effectively amends a prior legislative rule."
16   *Id.*
17         The Court finds that none of the conditions indicating the existence of a legislative rule are
18   present here. First, there is an adequate legislative basis for Defendant to have denied the petitions
19   absent the attestation language. The final rule creating the H-1B registration program, which
20   Plaintiffs do not dispute was lawfully implemented after notice and comment in 2019, would still
21   prohibit the submission of registrations to unfairly increase the chances of selection even if the
22   challenged portion of the attestation did not exist. The regulations allow only one registration per
23   beneficiary. *See* 8 C.F.R. § 214.2(h)(8)(iii)(a)(2) ("A petitioner may only submit one registration
24   per beneficiary in any fiscal year. If a petitioner submits more than one registration per

---

[2] On reply, Defendant appears to suggest that the attestation language was subject to notice and comment in some form. *See* Reply at 8 ("Before implementing the new language in the attestation, DNS provided notice of the proposed collection of information, including the challenged attestation language, and an opportunity to comment."). However, it is unclear whether Defendant claims that this was sufficient to meet the notice and comment requirement under the APA, and the Court will not address an argument Defendant has not clearly made.

7

beneficiary in the same fiscal year, all registrations filed by that petitioner relating to that beneficiary for that fiscal year will be considered invalid."). The final rule clarified that USCIS would implement the registration system in a manner that protects against loopholes and gamesmanship to get around the one-registration requirement. In particular, the final rule authorizes USCIS to "collect sufficient information for each registration to mitigate the risk that the registration system will be flooded with frivolous registrations." 84 Fed. Reg. 900. Similarly, the rule states that USCIS "intends to check the system for duplicate registrations during the registration phase," and that "individuals or entities who falsely attest to the bona fides of the registration and submitted frivolous registrations may be referred to appropriate federal law enforcement agencies for investigation and further action as appropriate." *Id.* These directives confirm that the final rule and implementing regulations plainly prohibit frivolous or fraudulent registrations, and thus provide an adequate legislative basis for Defendant to deny an H-1B petition for fraud based on a finding that a registrant worked together with another entity to gain an unfair advantage in the registration process.

Second, there is no evidence that Defendant invoked its general legislative authority in implementing the attestation language. Plaintiffs argue that Defendant treats the attestation as having the force of law because it "must be followed, else a petition *will* be denied." Opp. at 21 (emphasis in original). However, the final rule provides that Defendant's authority to "hold petitioners accountable for not complying with the attestations" they certify in the registration process is "consistent with its existing authority to prevent and deter fraud and abuse." 84 Fed. Reg. 904. This underscores that the attestation itself does not carry the force of law, but rather effectuates Defendant's existing legislative authority to combat fraud in the H-1B system. *See* 8 C.F.R. § 214.2(h)(8)(iii)(a)(2) (requiring one registration per beneficiary); *id.* § 214.2(h)(10)(ii) (prohibiting fraudulent petitions); *Erringer v. Thompson*, 371 F.3d 625, 632 (9th Cir. 2004) (no indication of an explicit invocation of legislative authority where a rule "interprets a specific mandate") (cleaned up). And unlike an invocation of legislative authority, which normally has a "binding effect" on agency action, the attestation requirement leaves room for agency discretion in that Defendant maintains the ability to make "individualized determinations" as to whether a

8

particular registrant worked with another entity to unfairly cheat the registration process. *See Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009).

Finally, the attestation requirement does not amend a prior legislative rule. "[A] rule is considered legislative under the 'amends a prior legislative rule' test only if it is inconsistent with another rule having the force of law." *Erringer*, 371 F.3d at 632 (internal citation and quotations omitted). Plaintiffs argue that the prohibition against multiple registrations is inconsistent with the existing rule that allows related employers to submit multiple petitions, which DHS clarified was unchanged by the 2019 rule implementing the registration program. Opp. at 22–23 (citing 84 Fed. Reg. 900). But multiple employers may submit petitions for the same beneficiary only if they have a legitimate business need to do so, and USCIS retains the authority to deny or revoke any such petition if it finds that no legitimate business need exists. *See* 8 C.F.R. § 214.2(h)(2)(G). Requiring employers to attest that they have not worked with another entity during the registration process to *unfairly* increase the chances of a particular beneficiary being selected is entirely consistent with the regulations allowing the submission of multiple legitimate petitions. *See Manney v. U.S. Dep't of Homeland Sec.,* 735 F. Supp. 3d 590, 598–99 (E.D. Pa. 2024) (holding that registration attestation requirement "does not undercut the safe harbor" rule that multiple employers with legitimate job offers may submit petitions for the same beneficiary).

In addition, Plaintiffs maintain that the attestation requirement is inconsistent with existing law because neither the language requiring a registrant to certify that it did not "work with" another entity to "unfairly increase the chances of selection" nor the concept of "collusion between potential employers to defraud the H-1B program" was included in the final rule. Opp. at 23. Instead, Plaintiffs argue, the only attestation contemplated by the final rule was for registrants to certify the existence of a "valid job offer." *Id.* The Court does not find this argument persuasive. Although the language of the attestation did not appear in its exact form in the final rule, it does not substantively depart from the policies the final rule established. That rule expressly mandates that each registration submitted must be "connected with a bona fide job offer" and authorizes enforcement action against those "who falsely attest to the bona fides of the registration and submitted frivolous registrations." *See* 84 Fed. Reg. 904. Prohibiting registrants from colluding

9

to unfairly game the registration system, and denying a petition if a registrant is found to have done so, are actions that are wholly consistent with these policies.

In sum, the Court finds that the challenged portion of the attestation requirement is an interpretive rule because it explains a preexisting law rather than creating or imposing a new substantive obligation. *See Hemp Industries*, 333 F.3d at 1087. Accordingly, it is valid even though it was not subject to notice and comment. *See id.*

Plaintiffs appear to concede that their claim depends on a finding that the attestation requirement is unlawful because it did not go through the notice and comment process. *See* Opp. at 19 ("The case is much less murky than Defendant's Motion suggests. Plaintiffs' petitions were denied based on the Multiple H-1B Cap Registration Prohibition, and Plaintiffs challenge the legality of that provision."), 20–21 ("Defendants have created a new legislative rule without going through the Notice and Comment process as required by the APA. Because Plaintiffs' petitions were denied on the basis of this legislative rule, such denials are in violation of the APA, are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, are arbitrary and capricious, and are without observance of procedure required by law."). Having rejected this theory, the Court finds that Plaintiffs' claim fails as a matter of law, and **GRANTS** Defendant's motion to dismiss Plaintiffs' amended complaint on that basis.

### C. Leave to Amend

Plaintiffs seek leave to amend any factual deficiencies in the complaint. Opp. at 25–26. Defendant responds that amendment is futile because Plaintiffs could not plead any facts that would remedy the legal infirmity of their theory. *See* Mot. at 39; Reply at 11.

The Court agrees with Defendant. As discussed, Plaintiffs' claim depends on the legal theory that the attestation requirement is unlawful, which the Court rejected. Given that this is a pure question of law, there are no facts that Plaintiffs could plead that would change the Court's conclusion. Consequently, Plaintiffs cannot cure the deficiencies in the pleading of their claim, and granting leave to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (district court should grant leave to amend unless pleading could not possibly be cured by the allegation of other facts).

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss, Dkt. No. 18. The Court **DISMISSES** the complaint without leave to amend. The Clerk is **DIRECTED** to enter judgment in Defendant's favor and to close the case.

**IT IS SO ORDERED.**

Dated:    2/11/2025

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge